UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------x
In Re:                                              Chapter 11

**AC I NEPTUNE LLC**,                               Case No. 18-20007 (RDD)

                    Debtor.
---------------------------------------------------------x

## CHAPTER 11 PLAN OF REORGANIZATION

AC I Neptune, the debtor and debtor-in-possession herein (the "Debtor"), hereby proposes the following Chapter 11 Plan of Reorganization (the "Plan") pursuant to Section 1121(a) of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").  Reference is made to the court-approved "Disclosure Statement" relating to the Plan for risk factors and a summary and analysis of the Plan and certain related matters.  The Debtor is the proponent of the Plan within the meaning of Section 1129 of the Bankruptcy Code. Subject to the restrictions on modifications set forth in Section 1127 of the Bankruptcy Code, Rule 3019 of the Federal Rules of Bankruptcy Procedure and the provisions of the Plan, the Debtor expressly reserves the right to alter, amend or modify the Plan, as needed, at any time prior to substantial consummation thereof.

## ARTICLE 1

## DEFINITIONS

Unless the context otherwise requires (i) the following terms shall have the following meanings when used in this Plan; (ii) any capitalized term that is used in this Plan and not defined in this Article 1 but that is defined in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning set forth therein; (iii) terms stated in the singular shall include the plural and vice versa; (iv) pronouns stated in the masculine, feminine or neuter gender shall include the masculine, the feminine and the neuter; (v) all section, article and exhibit references in this Plan are to the respective section of, article of or exhibit to this Plan; (vi) any reference to a contract, instrument, release or other agreement or document being in a particular form or on particular terms and conditions, means that such document shall be substantially in such form or substantially on such terms and conditions except as stated otherwise in this Plan; (vii) any reference to an existing document or exhibit filed or to be filed means such document or exhibit, as it may have been or may be amended, modified or supplemented; (viii) the words "herein", "hereof", "hereto" or "hereunder" and other words of similar import refer to this Plan in its entirety rather than to only a particular portion of this Plan; (ix) the rules of construction set forth in Section 102 of the Bankruptcy Code shall govern construction of this Plan; and (x) any reference contained herein to the Bankruptcy Code, or to any section of the Bankruptcy Code, refers to the Bankruptcy Code, or such section of the Bankruptcy Code, as it is existing and effective on the Petition Date, except to the extent, if any, that any post-Petition Date amendment to the Bankruptcy Code applies retroactively to cases filed on the Petition Date.

"Administrative Claim" means a Claim for, or request for payment of, an Administrative Expense.

"Administration Creditor" shall mean a Person entitled to payment of an Administrative Expense.

"Administrative Expense" means any cost or expense of administration of this Case, other than Statutory Fees, under Section 503(b) of the Bankruptcy Code.

"Administrative Tax Claim" means an Administrative Claim for a tax due to a Governmental Unit.

"Allowed" when used with "Claim" or "Administrative Claim" or "Administrative Expense" means a Claim, Administrative Claim or Administrative Expense against the Debtor that has not been disallowed pursuant to a Final Order and is not a Disputed Claim and (i) with respect to which a Proof of Claim or Proof of Administrative Expense Claim has been timely filed with the clerk of the Bankruptcy Court or, (ii) if no Proof of Claim has been filed, that has been or hereafter is listed by the Debtor in the Schedules as liquidated in amount and not disputed or contingent.

"Bankruptcy Code" means title 11 of the United States Code, as amended from time to time and effective as of the Petition Date.

"Bankruptcy Court" means the United States Bankruptcy Court for the Southern District of New York or the United States District Court for the Southern District of New York to the extent it withdraws the reference over all or any portion of this Case pursuant to section 157(d) of title 28 of the United States Code.

"Bankruptcy Fees" mean all fees and charges assessed against the estate under section 1930 of title 28 of the United States Code.

"Bankruptcy Rules" mean (i) the Federal Rules of Bankruptcy Procedure, and (ii) the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York, in either case, as now in effect or hereinafter amended.

"Bar Date" means the date set by Order of the Bankruptcy Court, subsequent to which a Proof of Claim may not be timely filed.

"Business Day" means any day other than a Saturday, Sunday, or other day on which commercial banks in New York, New York are authorized or required by law to close, or other Legal Holiday.

"Case" means this case under chapter 11 of the Bankruptcy Code commenced by the Debtor in the Bankruptcy Court on the Petition Date and styled, In Re AC Neptune LLC, Chapter 11 Case No. 18-20007 (RDD).

"Cash" means lawful currency of the United States of America.

"Claim" shall mean any right to payment from the Debtor, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or any right to an equitable remedy for breach of performance if such breach gives rise to a right of payment from the Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

"Class" means a category of substantially similar Allowed Claims.

"Closing Date" means the date of the closing of the sale of the Debtor's real property.

"Confirmation Date" means the date on which the Confirmation Order is entered by the Bankruptcy Court, provided that the Confirmation Order becomes a Final Order.

"Confirmation Hearing" means the hearing held by the Bankruptcy Court pursuant to section 1128(a) of the Bankruptcy Code to consider, inter alia, (i) confirming the Plan pursuant to section 1129 of the Bankruptcy Code, and (ii) any other matter necessary for the entry of the Confirmation Order.

"Confirmation Order" means an Order confirming the Plan pursuant to section 1129 of the Bankruptcy Code, in form and substance satisfactory to the Debtor, Titan and Greene House.

"Creditors Fund" means the fund established from the sale of the Debtor's real property, and the Creditors Fund shall be placed in a bank account that is located in an authorized depository approved by the Office of the United States Trustee, Region #2 for the Southern District of New York.

"Creditor" shall mean a Person that has a Claim against the Debtor that arose on or before the Petition Date or a Claim against the Debtor's estate of any kind specified in Section 502(g), 502(h) or 502(i) of the Bankruptcy Code.

"Debtor" shall mean AC I Neptune LLC.

"Disbursing Agent" shall mean the Debtor's counsel.

"Disclosure Statement" means the Disclosure Statement for AC I Neptune LLC's Plan of Reorganization, dated October 2018 including any Exhibits, attachments or amendments thereto, approved by Order of the Bankruptcy Court.

"Disputed Claim" means (a) any Claim that is listed in the Schedules as disputed, contingent or unliquidated and with respect to which no Proof of Claim has been filed; and (b) any Claim (including an Administrative Claim or Administrative Expense), or portion thereof, that has not been allowed or disallowed and with respect to which an objection or action concerning the allowance and/or extent thereof, in whole or in part, has been interposed within the applicable period of limitation fixed by this Plan, the Bankruptcy Code, the Bankruptcy Rules or the Bankruptcy Court, to the extent that any such objection or action has not been resolved by a Final Order.

"Disputed Claim Reserve" means the segregated account or accounts established by the Disbursing Agent pursuant to Section 7.7 of the Plan.

"Distributions" means payment made by the Disbursing Agent from the Net Sale Proceeds and Settlement Fund to holders of Allowed Claims in the amounts set forth herein, on the Effective Date, or as soon thereafter as practicable.

"Effective Date" means the later of the first day after the Confirmation Order becomes a final, non-appealable order or any stay of the Confirmation Order no longer remains in effect.

"Estate" means the estate created on the Petition Date as set forth in section 541 of the Bankruptcy Code.

"Final Order" means a judgment, order, ruling or other decree issued and entered by the Bankruptcy Court or by any state or other federal court or other tribunal located in one of the states, territories or possessions of the United States or the District of Columbia, that has not been stayed or that is no longer subject to appeal, certiorari proceeding or other proceeding for review or rehearing, and as to which no appeal, certiorari proceeding, or other proceeding for review or rehearing shall then be pending.

"Gerber" shall mean Sander Gerber.

"Governmental Unit" means the United States; State; Commonwealth; District; Territory; municipality; foreign state; department, agency, or instrumentality of the United States (but not a United States trustee while serving as a trustee in a case under this title), a State, a Commonwealth, a District, a Territory, a municipality, or a foreign state; or other foreign or domestic government.

"Indebtedness" as applied to any Person shall mean (a) all indebtedness or other obligations of the Person for borrowed money or for the deferred purchase price of property or services; (b) all indebtedness of the Person, contingent, direct or otherwise, secured (or for which the holder of such indebtedness has an existing right, contingent or otherwise, to be secured) by any mortgage, pledge, lien, security interest or vendor's interest under any conditional sale or other title retention agreement existing on any property or asset owned or held by the Person, whether or not the indebtedness secured thereby shall have been assumed by the Person (hereinafter "Secured"); or (c) all indebtedness of others, Secured or unsecured, directly or indirectly guaranteed, endorsed or discounted with recourse by the Person, or in respect of which

4

the Person is otherwise directly or indirectly liable, including without limitation, indebtedness in effect guaranteed by the Person through any agreement (contingent or otherwise) to purchase, repurchase or otherwise acquire such indebtedness or any security therefor, or to provide funds for the payment or discharge of such indebtedness (whether in the form of loans, advances, stock purchase, capital contributions or otherwise), or to maintain the solvency of any balance sheet or other financial condition of the obligor of such indebtedness, or to make payment for any products, materials or supplies or for any transportation or services regardless of the non-delivery or non-furnishing thereof; provided, however, that Indebtedness shall not include amounts owing for merchandise or services incurred in the ordinary course of business in accordance with normal and customary trade terms.

"Insider" means an insider of the Debtor as determined in accordance with § 101(31) of the Bankruptcy Code.

"Legal Holiday" means a Legal Holiday as that term is defined in Bankruptcy Rule 9006(a).

"Lien" means lien as defined in § 101(37) of the Bankruptcy Code.

"Mermelstein" shall mean Jacob Mermelstein.

"Net Sale Proceeds" means the gross proceeds from the sale of the Property, less all expenses of sale including any broker's fee[s] approved by the Bankruptcy Court, or any other fees with respect to the sale or transfer of the Property.

"NMH" means Neptune Mortgage Holdings, LLC.

"Order" means an order of the Bankruptcy Court.

"Person" shall mean an individual, a corporation, a partnership, an association, a joint stock company, an estate, a trust, any unincorporated organization, or a government or any political subdivision thereof or other entity.

"Petition Date" shall mean August 9, 2018, the date upon which Debtor filed his Chapter 11 petition with the Bankruptcy Court.

"Plan" shall mean this Plan of Reorganization proposed by Debtor.

"Post-Petition Tax Claim" means an Allowed Claim of a Governmental Unit for all taxes (or for interest or penalties related to such taxes) for any tax year or period, all or any portion of which occurs or falls within the period from and including the Petition Date through and including the Effective Date.

"Priority Claim" means a Claim, other than a Priority Tax Claim, an Administrative Claim, an Administrative Expense or Bankruptcy Fees, to the extent entitled to priority under section 507 of the Bankruptcy Code.

"Priority Tax Claim" means a Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

"Professional" means all professionals employed by the Debtor under section 327 of the Bankruptcy Code.

"Professionals' Fees" means compensation for services rendered, and reimbursement of expenses incurred by Professionals as awarded by Final Order following application in accordance with §§330 and 331 of the Bankruptcy Code.

"Proof of Administrative Claim" means a request for payment of an Administrative Expense (including fees and expenses allowed under sections 330 or 331 of the Bankruptcy Code of duly retained professionals providing services in this Case) filed pursuant to section 503 of the Bankruptcy Code.

"Proof of Claim" means a proof of Claim filed pursuant to section 501 of the Bankruptcy Code and Part III of the Bankruptcy Rules.

"Property" means the real property and improvements thereon located at 3501 Route 66, Neptune, New Jersey

"Priority Claim" shall mean any Allowed Claim, other than an Administration Expense, to the extent entitled to priority in payment under Section 507(a) of the Bankruptcy Code.

"Priority Creditor" shall mean a Creditor that has a Priority Claim.

"Priority Tax Claim" shall mean a Priority Creditor entitled to Priority under Section 507(a)(8).

"Reorganized Debtor" shall mean the Debtor on and after the Effective Date.

"Ringel" shall mean Benjamin Ringel.

"Sale" means a sale of the Property, pursuant to 11 U.S.C. § 363, and Federal Rule of Bankruptcy Procedure 6004(f), subject to the confirmation of the Plan, with a closing of such Sale following confirmation of the Plan, subject to the terms and conditions contained in the Plan.

"Sale Hearing" means the hearing at which time the Bankruptcy Court will consider the approval of the sale of the Property.

"Schedules" means the schedules of assets and liabilities filed by the Debtor with the Bankruptcy Court in accordance with section 521(1) of the Bankruptcy Code and Rule 1007 of the Bankruptcy Rules and any amendments thereto.

"Secured Claim" means, when referring to a Claim, (a) secured by a Lien on property in which the Estate has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Court order, or that is subject to a valid right of setoff pursuant to section 553 of the Bankruptcy Code as determined pursuant to section 506(a) of the Bankruptcy Code, or (b) Allowed pursuant to the Plan as a Secured Claim.

"Secured Tax Claim" means a Secured Claim for taxes held by a Governmental Unit and/or tax lien trust (including, but not limited to, real property taxes, water and sewer assessments and other similar liens, fees and charges).

"Transfer Taxes" means any and all stamp taxes or similar taxes, if and as applicable, including, without limitation, (a) any transfer tax payable to the State and City of New York, and (b) New York State Mortgage Recording Taxes imposed under article 11 of the New York State Tax Law. Notwithstanding anything contained in this Plan to the contrary, Transfer Taxes shall not include any flip taxes or any other fees imposed by Greene House with respect to the sale or transfer of the Greene Street Property.

"Unsecured Claim" shall mean a Claim that is other than an Administrative Claim, Administrative Expense, a Priority Claim or a Secured Claim.

"Unsecured Creditor" shall mean a Creditor that has an Unsecured Claim.

## ARTICLE 2

## TREATMENT OF UNCLASSIFIED CLAIMS

Pursuant to Section 1123(a)(l) of the Bankruptcy Code, this Plan does not classify Statutory Fees, Administrative Expenses or Allowed Priority Tax Claims. Such Claims, to the extent Allowed, shall receive the treatment provided in this Article 2 in full satisfaction, release and discharge thereof.

2.1. **Statutory Fees.** Statutory Fees, and any interest thereon, that are due on or prior to the Effective Date of the Plan shall be paid on the Effective Date or as soon thereafter as reasonably practicable. Statutory Fees, and any interest thereon, that may become due after the Effective Date shall be paid as they become due by the Debtor until the entry of a final decree closing the chapter 11 case, conversion of the case to chapter 7 or dismissal of the case.

2.2. **Administrative Claims.** Subject to the provisions of Article 8 of the Plan with respect to Disputed Claims, each Administrative Claim, to the extent not previously paid, shall be paid by the Disbursing Agent in Cash in full on (i) the later of (x) ten (10) days after closing of the sale of the Property, (y) the date payment of such Claim is due under the terms thereof or applicable law, or (z) three business days after such Claim becomes an Allowed Administrative Claim or (ii) as may be otherwise agreed in writing by the holder of such Claim; provided, however, that any Administrative Claim incurred by the Debtor in the ordinary course of his business shall be paid in full in accordance with the terms and conditions of the particular transaction giving rise to such Administrative Claim and any agreements

relating thereto.

All Professionals shall file final applications for approval of compensation and reimbursement of reasonable and necessary expenses pursuant to Section 330 of the Bankruptcy Code no later than thirty (30) days following the Effective Date. Any such application timely filed shall be deemed to be an Administrative Claim, subject to the entry of a Final Order by the Bankruptcy Court approving such application. Objections to any Professional's application for compensation or reimbursement must be timely filed and served upon such Professional, counsel to the Debtor, and counsel to the United States Trustee, in accordance with the Bankruptcy Rules or any order entered by the Bankruptcy Court. Upon entry of a Final Order approving an application, the fees shall be paid within ten (10) days after closing of the sale of the Property.

2.3. **Priority Tax Claims.** In full satisfaction, release and discharge, the holders of Allowed Priority Tax Claims shall be paid in Cash in full on the later of (i) the Effective Date, or (ii) three business days after such Claim becomes an Allowed Priority Tax Claim.

## ARTICLE 3

## CLASSIFICATION OF CLAIMS

Except as may otherwise be provided in Article 2, Allowed Claims are classified as set forth in this Article 3. A Claim is in a particular Class designated herein only to the extent such Claim (i) fits within the description of such Class and is in such other and different Class or Classes to the extent that the remainder thereof fits within the description of such other Class or Classes and (ii) has not been paid, released or otherwise satisfied prior to the Effective Date.

3.1. **Class 1 -** Class 1 consists of the Neptune Township Real Property Secured Tax Claim.

3.2. **Class 2a** - Class 2 consists of the NMH (Gerber) Secured Claim.

3.3 **Class 2b**- Class 2b consists of the Mermelstein/Ringel Secured Loan Claims.

3.4 **Class 3** - Class 3 consists of all General Unsecured Claims.

3.5. **Class 4**- Class 4 consists of the Debtor's Interest Holder.

## ARTICLE 4

## IDENTIFICATION OF IMPAIRED AND UNIMPAIRED CLAIMS

The Claims in Classes 1, 2a, 2b, and 3 are not impaired and are deemed to have accepted the Plan. Class 4 is impaired but not entitled to vote on the Plan.

# ARTICLE 5

## TREATMENT OF CLAIMS

5.1 **Class 1 – Neptune Township Secured Real Property Tax Claim.** Subject to the provisions of Article 8 of the Plan with respect to Disputed Claims, Neptune Township, the holder of the Allowed Neptune Township Secured Real Property Tax Claim, shall be paid the full Allowed amount of its claim from the Net Sale Proceeds on the Closing Date in accordance with §1124(1) of the Bankruptcy Code.

5.2 **Class 2a – NMH (Gerber) Secured Claim**. Subject to the provisions of Article 8 of the Plan with respect to Disputed Claims, NMH (Gerber) shall receive a Cash distribution out of the Net Sale Proceeds equal to the full Allowed amount of the Allowed NMH (Gerber) Secured Claim (calculated through the Closing Date) on the closing of the sale of the Property in accordance with §1124(1) of the Bankruptcy Code.

5.3 **Class 2b- Mermelstein/Ringel Secured Loans Claim**. Subject to the provisions of Article 8 of the Plan with respect to Disputed Claims, Mermelstein and Ringel shall receive a Cash distribution out of the Net Sale Proceeds equal to the full Allowed amount of the Allowed Mermelstein/Ringel Secured Loan Claims (calculated through the Closing Date) on the closing of the sale of the Property in accordance with §1124(1) of the Bankruptcy Code.

5.4 **Class 3 – General Unsecured Claims.** Subject to the provisions of Article 8 of the Plan with respect to Disputed Claims, each holder of an Allowed Class 3 General Unsecured Claim shall receive a Cash distribution out of the Net Sale Proceed equal to the full Allowed amount of their Allowed General Unsecured Claims on the later of: (i) ten (10) days after the Closing Date or (ii) three business days after such Claim becomes an Allowed Claim, not to exceed payment in full, plus interest at the legal rate.

5.5 **Class 4 – Interests.** RK Neptune LLC, the holder of the Class 5 Interests in the Debtor, shall retain such Interests and will receive a remaining amount of the Net Sale Proceeds after the payment to holders of Allowed Statutory Fees, Allowed Administrative Claims, Allowed Non-Classified Claims, and Allowed Claims in Classes 1 through 4.

# ARTICLE 6

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

6.1 **Treatment of Executory Contracts; Bar Date for Rejection Claims**. All Executory Contracts, to the extent not previously rejected or assumed or designated to be assumed and assigned pursuant to this Plan, shall be deemed rejected effective as of the Effective Date. Any claim for damages arising from such rejection shall be filed with the Court no later than thirty (30) days after receipt of notice of the occurrence of the Effective Date.

# ARTICLE 7

## IMPLEMENTATION OF THE PLAN

7.1. **Implementation.** The Confirmation Order shall contain appropriate provisions, consistent with Section 1142 of the Bankruptcy Code, directing the Debtor to execute or deliver or to join in the execution or delivery of any instrument required to effect a transfer of the Property, and to perform any act, including the satisfaction of any Lien, that is necessary for the consummation of this Plan. Pursuant to Section 1146 of the Bankruptcy Code, the issuance, transfer, or exchange of any security and the making or delivery of any instrument of transfer in connection with or in furtherance of this Plan shall not be subject to tax under any law imposing a stamp tax, real estate transfer tax, mortgage recording tax or similar tax.

7.2. **Sale of Property.** In furtherance of implementation of this Plan, the Debtor shall consummate the sale of the Property, and shall sell and consummate the sale of the Property, pursuant to Section 363 of the Bankruptcy Code. The sale of the Property shall not be taxed under any law imposing a stamp or similar tax as provided for in Section 1146(a) of the Bankruptcy Code, including, but not limited to, New Jersey State Law, and any other applicable law.

7.3. **Funding.** Except as set forth elsewhere in this Plan, all payments required to be made under this Plan shall be made by the Disbursing Agent in accordance with the terms of this Plan from the Net Sale Proceeds, and any Cash on hand with the Debtor

7.4. **Execution of Documents.** On or after the Effective Date, the Debtor shall execute, release and deliver all documents reasonably necessary to consummate the transactions contemplated by the terms and conditions of this Plan. Pursuant to Sections 105, 1141(c) and 1142(b) of the Bankruptcy Code, the Debtor shall be authorized to execute any estoppel certificate, or any notice of satisfaction, release or discharge of any Lien, Claim or encumbrance not expressly preserved in this Plan and deliver such notices to any and all federal, state and local governmental agencies or departments for filing and recordation, and the Confirmation Order shall expressly so provide.

7.5. **Filing of Documents.** Pursuant to Sections 105, 1141(c) and 1142(b) of the Bankruptcy Code, each and every federal, state and local governmental agency or department, shall be directed to accept and record any and all documents and instruments necessary, useful or appropriate to effectuate, implement and consummate the transactions contemplated by this Plan, and any and all notices of satisfaction, release or discharge or assignment of any Lien, Claim or encumbrance not expressly preserved by the Plan.

# ARTICLE 8

## PROVISIONS GOVERNING DISTRIBUTIONS

8.1. **Disbursing Agent.** All Distributions under this Plan shall be made by the Disbursing Agent who shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court.

8.2. **Rights and Powers of the Disbursing Agent.** The Disbursing Agent shall be empowered to (i) effect all actions and execute all agreements, instruments and other documents necessary to perform its duties under this Plan, (ii) make all Distributions contemplated hereby, (iii) employ and compensate professionals to represent it with respect to its responsibilities and (iv) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to this Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof.

8.3. **Timing of Certain Distributions Under the Plan.** Except as otherwise provided in this Plan, and subject to sections 8.7 and 8.8 of this Plan, any payments, distributions or other performance to be made pursuant to this Plan on account of any Disputed Claim shall be deemed to be timely made if made on the later of (i) thirty (30) days after the closing of the sale of the Property or (ii) three (3) business days after such Claim becomes Allowed or (iii) such other times provided in this Plan.

8.4. **Method of Payment.** Unless otherwise expressly agreed, in writing, all Cash payments to be made pursuant to this Plan shall be made by check drawn on a domestic bank.

8.5. **Objection Deadline.** Unless otherwise ordered by the Bankruptcy Court, the Debtor may file and serve an objection to any Claim, other than a Claim that has already been allowed by an order of the Bankruptcy Court or pursuant to this Plan, on the later to occur of (i) 60 days following the Effective Date or (ii) 60 days after the date proof of such Claim or a request for payment of such Claim is filed.

8.6. **Prosecution of Objections.** After the Effective Date, only the Debtor shall have authority to settle, compromise, withdraw or resolve objections to Claims.

8.7. **No Distribution Pending Allowance.** No payment or distribution of Cash or other property shall be made with respect to any portion of a Disputed Claim unless and until all objections to such Disputed Claim are withdrawn or resolved by Final Order.

8.8. **Escrow of Cash Distributions.** On any date that distributions are to be made under the terms of this Plan, the Disbursing Agent shall deposit in one or more segregated accounts maintained at an authorized Southern District of New York depository, Cash or property equal to 100% of the Cash or property that would be distributed on such date on account of Disputed Claims as if each such Disputed Claim were an Allowed Claim but for the pendency of a dispute with respect thereto, including, but not limited to (i) Disputed Claims that may be entitled to treatment as Administrative Expenses or as priority claims pursuant to Sections 503 and 507 of the Bankruptcy Code, (ii) claims of Governmental Units for any tax, (iii) any amount due but not payable on the Effective Date on account of

Administrative Expenses or claims entitled to priority pursuant to Sections 503 and 507 of the Bankruptcy Code, (iv) Secured Claims and (v) Unsecured Claims. The Disbursing Agent shall also segregate any interest, dividends or proceeds of such Cash. Such Cash together with any interest, dividends or proceeds thereof, shall be held in trust for the benefit of the holders of all such Disputed Claims pending determination of their entitlement thereto.

8.9. **Distribution After Allowance.** Within fifteen (15) days after the entry of a Final Order resolving an objection to a Disputed Claim, the Disbursing Agent shall distribute all Cash or other property, including any interest, dividends or proceeds thereof, to which a holder is then entitled with respect to any Disputed Claim that has become an Allowed Claim.

8.10. **Investment of Segregated Cash and Property.** To the extent practicable, the Disbursing Agent may invest any Cash or other property segregated on account of a Disputed Claim, undeliverable distribution, or any proceeds thereof, in an authorized Southern District of New York Depository, (i) in a manner that will yield a reasonable net return taking into account the safety of the investment or (ii) in any manner permitted by Section 345 of the Bankruptcy Code; provided, however, that the Disbursing Agent shall be under no obligation to so invest such Cash or proceeds and shall have no liability to any party for any investment made or any omission to invest such Cash, other property or proceeds.

8.11. **Delivery of Distributions.** Except as provided in Sections 8.12, 8.13 and 8.14 of this Plan, distributions to holders of Allowed Claims shall be made: (1) at the addresses set forth on the respective Proofs of Claim Filed by such holders; (2) at the addresses set forth in any written notices of address changes delivered to the Disbursing Agent after the date of any related Proof of Claim; or (3) at the address reflected in the Schedules if no Proof of Claim is filed and the Disbursing Agent has not received a written notice of a change of address.

8.12. **Undeliverable Distributions.**

(a) If the distribution to the holder of any Claim is returned to the Disbursing Agent as undeliverable, no further distribution shall be made to such holder unless and until the Disbursing Agent is notified in writing of such holder's then current address. Undeliverable distributions shall remain in the possession of the Disbursing Agent until the earlier of (i) such time as a distribution becomes deliverable or (ii) such undeliverable distribution becomes an unclaimed distribution pursuant to Section 8.13 of this Plan.

(b) Until such time as an undeliverable distribution becomes an unclaimed distribution pursuant to Section 8.13 of this Plan, within thirty (30) days after the end of each calendar quarter following the Effective Date, the Disbursing Agent shall make distributions of all Cash and property that has become deliverable during the preceding quarter. Each such distribution shall include the net return yielded from the investment of any undeliverable Cash from the date such distribution would have been due had it then been deliverable to the date that such distribution becomes deliverable.

(c) Nothing contained in this Plan shall require the Disbursing Agent to attempt to locate any holder of an Allowed Claim.

8.13. **Unclaimed Distributions.** Any Cash or other property to be distributed under this Plan that is unclaimed shall be reallocated to those Creditors with Allowed Claims in the same class of Creditor whom such distribution was initially made. Such reallocation shall be made after the expiration of (i) three months after the Effective Date and such funds remain unclaimed or (ii) thirty days after an Order allowing the Claim of that Entity becomes a Final Order, and such Entity's claim shall be deemed to be reduced to zero.

8.14. **Set-offs.** The Disbursing Agent may, but shall not be required to, set-off against the distributions to be made pursuant to this Plan the claims, obligations, rights, causes of action and liabilities of any nature that the Debtor may hold against the holder of an Allowed Claim, provided, however, that neither the failure to effect such a set-off nor the allowance of any claim hereunder shall constitute a waiver or release by the Debtor of any such claims, obligations, rights, causes of action and liabilities that the Debtor has or may have against such holder. Any parties effected by a set-offs shall receive written notice of such intended set-off three days prior to such set-off.

8.15. **Disallowance.** Except as provided in Section 6.1 hereof, any Disputed Claim for which no proof of claim has been filed on or prior to the Bar Date shall be disallowed and expunged as of the Effective Date.

## ARTICLE 9

## DISCHARGE AND RELEASES

9.1. **Discharge**. Pursuant to section 1141(d)(1) of the Bankruptcy Code, Confirmation will discharge the Debtor from any Claim that arose prior to Confirmation whether or not the Holder of the Claim has accepted the Plan.

9.2. **Injunction.** Except (i) as otherwise provided in this Plan, (ii) as otherwise provided under Final Order entered by the Bankruptcy Court, or (iii) with respect to the Debtor's obligations under this Plan, the entry of the Confirmation Order shall forever stay, restrain and permanently enjoin on and after the Confirmation Date: (a) the commencement or continuation of any action, the employment of process, or any act to collect, enforce, attach, recover or offset from the Property sold under this Plan; or (b) the creation, perfection or enforcement of any lien or encumbrance against the Property sold under this Plan with respect to any Claim discharged under this Plan.

9.3. **Limitation of Liability.** Neither the Debtor, nor any of his agents or employees (acting in such capacity) nor any professional person employed by the Debtor, shall have or incur any liability to any entity for any action taken or omitted to be taken in connection with or related to the formulation, preparation, prosecution, dissemination, Confirmation, consummation or administration of this Plan, the Disclosure Statement or any contract, instrument, release or other agreement or document created or entered into with respect to this Plan, or the distribution of property under this Plan, except as may be expressly provided for in such agreements or documents, and except for willful misconduct or gross negligence, breach of fiduciary duty, criminal conduct, ultra vires actions or the disclosure of

confidential information that causes damages. In addition, any release, exculpation or limitation of liability provided for in this Plan shall not release any attorney from any obligations owed under Rule 1.8(h) of the New York Rules of Professional Conduct for malpractice liability. Nothing in the Plan or the Confirmation Order shall effect a release of any claim by the United States Government or any of its agencies or any state and local authority, including without limitation any claim arising the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against (i) the Debtor, (ii) any of the Debtor's members, shareholders, officers, directors, employees, attorneys, advisors, agents, representatives, and assigns. In addition, subject to Sections 524 and 1141 of the Bankruptcy Code, the releases, exculpations, and limitations of liability described herein shall not preclude police, federal tax, or regulatory agencies from fulfilling their statutory duties.

9.4. **Plan and Confirmation Order as Release**. From and after the Effective Date, a copy of the Confirmation Order and this Plan shall constitute and may be submitted as a complete defense, in favor of the Debtor, to any claim or liability released pursuant to this Article 9 of this Plan.

## ARTICLE 10

### CONDITIONS TO CONFIRMATION AND THE EFFECTIVE DATE

10.1. **Conditions for Confirmation.** In addition to meeting the requirements of Section 1129 of the Bankruptcy Code, the following conditions shall be conditions to the Confirmation of this Plan:

(a) the Confirmation Order shall approve in all respects all of the provisions, terms and conditions of the Plan, and

10.2. **Conditions to the Effective Date.** The following shall be conditions to the Effective Date of this Plan. The Debtor may waive a condition by filing a õNotice of Waiver of Conditionö with the Bankruptcy Court on the Courtøs Electronic Court Filing System:

(a) the Confirmation Order shall become a Final Order; and
(b) the stay of the Confirmation Order no longer remains in effect.

## ARTICLE 11

### MISCELLANEOUS PROVISIONS

11.1. **Orders in Aid of Consummation.** Pursuant to Sections 105, 1141, 1142 and 1143 of the Bankruptcy Code, the Bankruptcy Court may enter one or more Orders in aid of Confirmation directing the implementation of matters or actions required by this Plan.

11.2. **Compliance with Tax Requirements.** In connection with this Plan, the Debtor and the Disbursing Agent shall comply with all withholding and reporting requirements

imposed by federal, state and local taxing authorities and distributions under this Plan shall be subject to such withholding and reporting requirements; provided however, that the transfer of any Cash, property or other interest hereunder shall not be subject to any federal, state or local tax to the fullest extent provided under Section 1146 of the Bankruptcy Code.

  11.3. **Due Authorization by Creditors.** Each and every Creditor who accepts the distributions provided for under this Plan warrants that it is the lawful owner of such Claim and is authorized to accept the distributions provided for in this Plan and that there are no outstanding Liens, encumbrances, commitments, agreements, or understandings, express or implied, that may or can in any way defeat or modify the rights released, conveyed or modified by this Plan, or obligations undertaken by such Creditor under this Plan.

  11.4. **Amendments.** This Plan may be altered, amended or modified by the Debtor in writing and signed by the Debtor at any time before the substantial consummation of this Plan, as provided in Sections 1101(a) and 1127 of the Bankruptcy Code and Bankruptcy Rule 3019.

  11.5. **Revocation.** The Debtor may revoke or withdraw this Plan at any time prior to entry of the Confirmation Order. If this Plan is revoked or withdrawn or if no Confirmation Order is entered, this Plan shall be null and void, and nothing contained in this Plan shall (i) constitute a waiver or release of any Claims by or against the Debtor; or (ii) prejudice in any manner the rights of the Debtor or any other party in any further proceedings involving the Debtor or his Estate.

  11.6. **Request for Relief Under Section 1129(b).** If this Plan is accepted by one or more, but not all impaired Classes of Creditors, the Debtor may request confirmation under Section 1129(b) of the Bankruptcy Code of any Class of Creditors, subject to any modification of this Plan made pursuant to Section 1127 of the Bankruptcy Code, and Bankruptcy Rule 3019.

  11.7. **Filing of Additional Documents.** Except as otherwise provided in this Plan, on or before the Effective Date, the Debtor may file with the Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan.

  11.8. **Section Headings.** The section headings contained in this Plan are for reference purposes only and shall not affect in any way the meaning or interpretation of this Plan.

  11.9. **Computation of Time.** In computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

  11.10. **Successors and Assigns.** The rights, benefits and obligations of any entity named or referred to in this Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such entity.

  11.11. **Notices.** All notices and other communications to be given or made hereunder shall be in writing and shall be deemed to have been given or made when mailed or as otherwise set forth herein:

(a) if to the Debtor, Shafferman & Feldman LLP, 137 Fifth Avenue, 9th Floor, New York, New York 10010, Attn: Joel M. Shafferman, Esq.;

(b) if to any Creditor at: (i) the addresses set forth on the respective Proofs of Claim filed by such holders; (ii) the addresses set forth in any written notices of address changes delivered to the Disbursing Agent after the date of any related Proof of Claim; or (iii) the address reflected in the Schedules if no Proof of Claim is filed and the Disbursing Agent has not received a written notice of a change of address;

(c) if to any Entity that has filed a notice of appearance, at the addresses set forth on such notice of appearance.

11.12. **Governing Law.** Except to the extent that the Bankruptcy Code or Bankruptcy Rules or other Federal law are applicable, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with the laws of the State of New York and State of New Jersey, as applicable, without giving effect to the principles of conflict of laws thereof.

11.13. **Other Actions.** Nothing contained herein shall prevent the Debtor or Creditors from taking such actions as may be reasonably necessary to consummate this Plan, although such actions may not specifically be provided for within this Plan.

11.14. **Severability.** In the event any provision of this Plan is determined to be unenforceable such determination shall in no way limit or affect the enforceability and operative effect of any or all other provisions of this Plan.

11.15. **Business Day.** In the event that this Plan requires an act to be performed on a day that is not a Business Day, such act shall be performed on the first Business Day thereafter.

11.16. **Post Confirmation Reporting.** The Debtor shall file quarterly post confirmation reports and schedule periodic post confirmation status conferences**.**

# ARTICLE 12

# RETENTION OF JURISDICTION

12.1. **Retention of Jurisdiction.** Notwithstanding the entry of the Confirmation Order or the occurrence of the Effective Date, until the Case is closed, the Bankruptcy Court shall retain and have original, but not exclusive, jurisdiction to:

(a) Insure that this Plan is consummated, and to enter any Order pursuant to Section 1142(b) of the Bankruptcy Code, to compel the Debtor and any other necessary party, to take such action and execute such documents to effectuate this Plan;

(b) Consider any modification of this Plan proposed pursuant to Section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019;

(c) Allow, disallow, determine, liquidate, classify or establish the priority, secured or unsecured status of any Claim, including, without limitation, the resolution of any request for payment of any Administrative Expense, the resolution of any and all objections to the allowance or priority of Claims, and the resolution of any adversary proceeding;

(d) Grant or deny any and all applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or this Plan, for any period ending on or before the Effective Date;

(e) Resolve any motions pending on the Effective Date to assume, assume and assign or reject any Executory Contract or Unexpired Lease to which the Debtor is a party or with respect to which the Debtor may be liable and to hear, determine and if necessary, liquidate, any and all Claims arising therefrom;

(f) Ensure that distributions to holders of Allowed are accomplished pursuant to the provisions of this Plan;

(g) Decide or otherwise resolve any and all applications, motions, adversary proceedings, contested or litigated matters, and any other matters or grant or deny any applications involving the Debtor that may be pending on the Effective Date;

(h) Enter such Orders as may be necessary or appropriate to implement or consummate the provisions of this Plan and all contracts, instruments, releases and other agreements or documents created in connection with the Plan or Disclosure Statement or to enforce all orders, judgments, injunctions and rulings entered in connection with the Case, including, but not limited to any Order necessary to enforce the provisions of Article 7 of this Plan;

(i) Resolve any and all controversies, suits or issues that may arise in connection with the consummation, interpretation or enforcement of this Plan;

(j) Modify this Plan before or after the Effective Date pursuant to section 1127 of the Bankruptcy Code, or to modify the Disclosure Statement or any contract, instrument, release or other agreement or document created in connection with this Plan or Disclosure Statement with the consent of the Debtor and any other interested party affected by such modification;

(k) Remedy any defect or omission or reconcile any inconsistency in any Order, this Plan, the Disclosure Statement or any contract, instrument, release or other agreement or document created in connection with this Plan, to the extent authorized herein or in the Bankruptcy Code;

(1) Issue any injunctions, enter and implement other Orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with consummation or enforcement of this Plan;

(m) Enter and implement such Orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated;

(n) Determine any dispute arising under or related to this Plan, including, without limitation, any dispute concerning the scope or effect of any release or discharge provided for by this Plan or the Confirmation Order;

(o) Determine any other matters that may arise in connection with or relate to this Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release or other agreement or document created in connection with this Plan or Disclosure Statement; and

(p) Enter an Order or Final Decree concluding the Case within 14 days following the full administration of the estate, after the Debtor files, on notice to the United States Trustee, an application and a proposed order seeking a Final Decree pursuant to Bankruptcy Rule 3022.

12.2. **Post-Closing Jurisdiction.** Notwithstanding the entry of a final decree or an Order closing the Case, the Bankruptcy Court shall retain jurisdiction to reopen the Case for the purpose of enforcing, by injunction or otherwise, the terms of this Plan, the Confirmation Order and any final decree, including, without limitation, the enforcement of any rights of the Debtor.

Dated: New York, New York
      November 6, 2018

Respectfully submitted,

  /S/ Jacob Mermelstein
Jacob Mermelstein, Member of RK Neptune LLC, the Sole Member of AC I NEPTUNE LLC, and Co-Manager of AC I NEPTUNE LLC

**SHAFFERMAN & FELDMAN LLP**
Proposed Counsel to the Debtor

By:    /S/ Joel M. Shafferman
     Joel M. Shafferman, Esq.

137 Fifth Avenue, 9th Floor
New York, New York 10010
(212) 509-1802