UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x
In Re:                                          Chapter 11

**AC I NEPTUNE LLC,**                           Case No. 18-20007 (RDD)

                            Debtor.

--------------------------------------------------------x

### DISCLOSURE STATEMENT IN CONNECTION WITH PROPOSED
### <u>CHAPTER 11 PLAN OF REORGANIZATION</u>


**THIS IS NOT A SOLICITATION OF ACCEPTANCES OR REJECTIONS OF THE PLAN.  ACCEPTANCES OR REJECTIONS MAY NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT. THIS DISCLOSURE STATEMENT IS BEING SUBMITTED FOR APPROVAL BUT HAS NOT YET BEEN APPROVED BY THE COURT.**



**SHAFFERMAN & FELDMAN LLP**
137 Fifth Avenue, 9th Floor
New York, New York 10010
(212) 509-1802
Joel M. Shafferman, Esq.

*Counsel to the Debtor*

Dated: November 6, 2018

# I. SUMMARY

AC I Neptune LLC, the debtor and debtor-in-possession herein (the "Debtor"), provides this Disclosure Statement (the "Disclosure Statement"), pursuant to § 1125(b) of title 11 of the United States Code (the "Bankruptcy Code"), to all known Creditors of the Debtor, and other parties in interest, for the purpose of soliciting acceptances of the Chapter 11 Plan of Reorganization (the "Plan")[1] proposed by the Debtor. The Plan has been filed with the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") and a copy of the same accompanies the Disclosure Statement. By Order dated December__, 2018, this Disclosure Statement was approved by the Bankruptcy Court as containing "adequate information" of a kind, and in sufficient detail, to enable a hypothetical reasonable investor typical of the Debtor's Creditors to make an informed decision whether to accept or reject the Plan.

**The Debtor strongly urges that you read this Disclosure Statement because it contains a summary of the Plan provisions and important information concerning the Debtor's financial affairs, the administration of the Debtor's bankruptcy estate and the anticipated recovery by Creditors of the Debtor.**

A finding by the Bankruptcy Court that the Disclosure Statement contains adequate information pursuant to Section 1125 of the Bankruptcy Code does not mean, indicate or imply in any manner that the Bankruptcy Court recommends either an acceptance or a rejection of the Plan by a party eligible to vote thereon.

A glossary of terms frequently used in this Disclosure Statement is set forth in Article 1 of the Plan. Capitalized terms utilized, but not defined herein, have the meanings ascribed to them in the Plan.

In the opinion of the Debtor, the treatment of Claims under the Plan provides a greater recovery for Creditors than that which is likely to be achieved under alternative reorganization plans or the liquidation of the Debtor under Chapter 7 of the Bankruptcy Code.

**Accordingly, the Debtor believes that Confirmation of the Plan is in the best interests of Creditors and recommends that you vote to accept the Plan.**

---

[1] In the event there is any inconsistency between the Disclosure Statement and Plan, the terms of the Plan shall supersede the Disclosure Statement.

# BACKGROUND ABOUT THE
# DEBTOR AND THIS CHAPTER 11 CASE

### A.      THE DEBTOR, ITS REAL PROPERTY, and MORTGAGEE

The Debtor is a single member Delaware limited liability company which operates through RK Neptune, LLC, its sole member. The members of RK are: YKYM LLC (25%); Ben Ringel (25%); Gerber Ventures, LLC (25%); and Tibor Klein (25%). The Debtor is engaged in the business of owning the real property known as and located at 3501 Route 66, Neptune, New Jersey (the ōPropertyö).

The Debtor acquired the Property over 12 years ago from CNA Insurance for the purpose of tearing down the existing vacant office buildings and building a Lowes Home Improvement and other retail. After the 2008 recession, however, Lowes cancelled its lease. The Property has been vacant since the purchase except for a brief period during which it was leased to FEMA.

Approximately two years later, an entity controlled by Sander R. Gerber became a member of the Debtor. Mr. Gerber is the Managing Partner, Chief Executive Officer and Chief Investment Officer of a hedge fund called Hudson Bay Capital Management LP ("Hudson Bay") (https://hudsonbaycapital.corn/leadership). Mr. Gerber is Hudson Bay's Chief Executive Officer. Mr. Gerber also functions as a Portfolio Manager who opportunistically invests in special situations in addition to monitoring and hedging tail risks. According to a recent report, Hudson Bay has a portfolio value of $7,107,450,000. ("https://www.insidermonkey.com/hedge- fund/hudson+bay+capital+management/429/).

Approximately three years ago, Mr. Mermelstein and Mr. Ringel procured a buyer for the least valuable portion of the Property for $2,000,000. The Buyer was National Field Network ("NFN"). NFN was purchasing a 40,000 sq. ft. antiquated office building at the back of the Property. The Debtor would have retained a 110,000 square foot office building facing Route 66 on 55 acres with 2500 foot of frontage.

The sale would have allowed the Debtor to pay off its $2,000,000 mortgage held and originated by First State Realty ("First State"). First State was working with the Debtor and was fully supportive of the sale.

After the Debtor entered into the contract with NFN, it planned to subdivide the Property to create the "NFN parcel" in order to close title. During this period, Mr. Gerber surreptitiously reached out to the principal of NFN and told them that Mr. Mermelstein and Mr. Ringel were "crooks" and that they were not entitled to sell the Property. As a result, NFN cancelled the contract and told Mr. Mermelstein and Mr. Ringel that it did not want to be ōin the middle of a partnership war."

At approximately the same time, Mr. Gerber reached out to First State and told them that the NFN deal had fallen through. Having engineered a catastrophe for the Debtor, Mr. Gerber apparently asked to buy the note and mortgage on the Property on the pretext that he

"wanted to help the partnership."  Mr. Gerber never disclosed his purchase of the note and mortgage.

After Mr. Mermelstein and Mr. Ringel learned that Mr. Gerber did, in fact, control the note and mortgage on the Property, Mr. Mermelstein met with Mr. Gerber and Mr. Gerber assured Mr. Mermelstein that he was not going to foreclose.  However, on May 26, 2017, Neptune Mortgage Holdings, LLC ("NMH"), the entity by which Mr. Gerber purchased the mortgage on the Property, commenced a foreclosure action in the Superior Court of New Jersey, Chancery Division, Monmouth County (the "N.J. State Court"), Docket No. F-013283-17.

In early 2018, Mr. Ringel received repeated calls from Hope Brodsky, a managing director of Newmark Grubb Knight Frank ("Newmark") who was marketing the Property, about groups looking to buy the Property.  Mr. Ringel became aware of the foreclosure in May of 2018, and reached out to Mr. Mermelstein but did not hear back. Additionally, Mr. Ringel's counsel reached out to Mr. Gerber's counsel to stop the foreclosure through a negotiated outcome.

At approximately the same time, Ms. Brodsky called Mr. Ringel about Cardinal Point Management, LLC ("Cardinal") and its interest in purchasing the Property. Mr. Ringel spoke to Cardinal and began negotiating. At the same time, Mr. Ringel instructed his counsel to make a deal with Mr. Gerber.

On June 27, 2018, Mr. Ringel believed that the Debtor had reached an agreement with Mr. Gerber. Under this deal, Mr. Mermelstein and Mr. Ringel were to buy the note and mortgage from NMH and finish the foreclosure. NMH would receive approximately $3,500,000. After further discussions between Mr. Ringel's attorneys and Mr. Gerber's attorney on the afternoon of June 27, 2018, Mr. Ringel agreed to Mr. Gerber's terms. We signed a Letter of Intent with Cardinal on July 25, 2018 (the "LOI") which Mr. Gerber was aware of.  On July 31, 2018, much to my surprise, my attorney notified me that Mr. Gerber's entity NMH, did in fact finish the foreclosure.

## A.    THE DEBTOR'S CHAPTER 11 CASE

On August 9, 2018 (the "Filing Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in order to preserve the value of the Property and to complete the sale of the Property to Cardinal.  Shortly after the filing of this Chapter 11 case, NMH filed a motion seeking to dismiss this case so that it could complete its foreclosure sale of the Property [ECF Doc# 9](the "Dismissal Motion").

The Debtor has vigorously opposed the Dismissal Motion.  On October 4, 2018, the Debtor signed a Purchase Agreement for the sale of the Property with Pinellas Gateway, LLC ("Pinellas") (an entity related to Cardinal) for $3,500,000; and on October 11, 2018, the Debtor filed a motion seeking approval of the sale of the Property to Pinellas, on a private sale basis [ECF Doc# 37](the "Sale Motion").  The hearing date for the Dismissal Motion and the Sale Motion is November 19, 2018 at 10:00 am.

## B.     THE PLAN

The means of implementation of the Plan is the sale of the Property to Pinellas for $5,800,000. The Debtor believes that the proceeds generated by the sale will pay all allowed claims of creditors with a significant return to equity.

The table below provides a summary of the classification and treatment of Claims under the Plan. The figures set forth in the table below are the Debtor's best current estimate of the aggregate amount of Claims in the Case. These estimates are based upon an analysis of the Schedules filed by the Debtor, Proofs of Claim filed by Creditors and certain other documents of public record. There can be no assurance that Claims will be allowed by the Bankruptcy Court in the amounts set forth below. The aggregate amount of Allowed Claims may be significantly lowered from the amounts set forth below as the result of objections to Claims which may be brought, or through stipulations which may be negotiated with various Creditors.

| Class and Estimated Amount | Type of Claim | Summary of Treatment |
|---|---|---|
| **Unclassified** – Approximately $10,000 after the sale of the Property | Statutory Fees | All fees and charges payable to the U.S. Trustee, including those owed under 28 U.S.C. §1930(a)(6), shall be fully paid.  Such fees and charges that are due on or prior to the Effective Date shall be paid no later than ten (10) days after the Effective Date.<br><br>Such fees that may become due after the Effective Date shall be paid as they become due by the Post-Confirmation Debtor until the entry of a final decree closing the Chapter 11 Case, or until the Chapter 11 Case is converted or dismissed. |
| **Unclassified** – Approximately $35,000 | Administrative Claims professionals' claims for compensation], Claims for Professional compensation, post-petition ordinary court liabilities, and post-petition tax claims, if any) | Subject to the provisions of Article 8 of the Plan with respect to Disputed Claims, each Administrative Claim, to the extent not previously paid, shall be paid by the Disbursing Agent in Cash in full on (i) the later of (x) ten (10) days after closing of the sale of the Property, (y) the date payment of such Claim is due under the terms thereof or applicable law, or (z) three business days after such Claim becomes an Allowed Administrative Claim or (ii) as may be otherwise agreed in writing by the holder of such Claim; provided, however, that any Administrative Claim incurred by the Debtor in the ordinary course of his business shall be paid in full in accordance with the terms and conditions of the particular transaction giving rise to such Administrative Claim and any agreements relating thereto. |
| **Unclassified** – Unknown, if any | Priority Tax Claims | Each Allowed Priority Tax Claim, to the extent not previously paid, shall be paid in Cash in full on the |

| Class and Estimated Amount | Type of Claim | Summary of Treatment |
|---|---|---|
| exist [2] | | later of (i) the Effective Date, or (ii) three business days after such Claim becomes an Allowed Priority Tax Claim. |
| **Class 1 –** $2,160[3] | Neptune Township Secured Real Property Tax Claim | **Unimpaired.** Subject to the provisions of Article 8 of the Plan with respect to Disputed Claims, Neptune Township, the holder of the Allowed Neptune Township Secured Real Property Tax Claim, shall be paid the full Allowed amount of its claim from the Net Sale Proceeds on the Closing Date in accordance with §1124(1) of the Bankruptcy Code. . |
| **Class2a–** Approximately $3,508,631.31[4] | NMH (Gerber) Secured Claim | **Unimpaired.** Subject to the provisions of Article 8 of the Plan with respect to Disputed Claims, NMH (Gerber) shall receive a Cash distribution out of the Net Sale Proceeds equal to the full Allowed amount of the Allowed NMH (Gerber) Secured Claim (calculated through the Closing Date) on the closing of the sale of the Property in accordance with §1124(1) of the Bankruptcy Code. |
| **Class2b–** Approximately $1,370,000[5] | | **Unimpaired.** Subject to the provisions of Article 8 of the Plan with respect to Disputed Claims, Mermelstein and Ringel shall receive a Cash distribution out of the Net Sale Proceeds equal to the full Allowed amount of the Allowed Mermelstein/Ringel Secured Loan Claims (calculated through the Closing Date) on the closing of the sale of the Property in accordance with §1124(1) of the Bankruptcy Code. |
| **Class 3 –** Approximately $17,000[6] | General Unsecured Claims | **Unimpaired.** Subject to the provisions of Article 8 of the Plan with respect to Disputed Claims, each holder of an Allowed Class 3 General Unsecured Claim shall receive a Cash distribution out of the Net Sale Proceed equal to the full Allowed amount of their Allowed General Unsecured Claims on the later of: (i) ten (10) days after the Closing Date or (ii) three business days after such Claim becomes an Allowed Claim, not to exceed payment in full, plus interest at |

[2] The Debtor reserves all of its rights to object to Priority Tax Claims

[3] The Debtor reserves all of its rights to object to the Neptune Township Secured Real Property Tax Claim.
[4] The Debtor reserves all of its rights to object to the NMH Secured Claim.
[5] The Debtor reserves all of its rights to object to the Mermelstein/Ringel Secured Loans Claim.
[6] The Debtor reserves all of its rights to object to any General Unsecured Claims.

| Class and Estimated Amount | Type of Claim | Summary of Treatment |
|---|---|---|
| | | the legal rate. |
| Class 4 | Debtor Interest Holder | **Impaired**. RK Neptune LLC, the holder of the Class 4 Interests in the Debtor, shall retain such Interests and will receive a remaining amount of the Net Sale Proceeds after the payment to holders of Allowed Statutory Fees, Allowed Administrative Claims, Allowed Non-Classified Claims, and Allowed Claims in Classes 1 through 3. |

### C.      CONFIRMATION OF THE PLAN

Pursuant to Section 1128 of the Bankruptcy Code, the Bankruptcy Court has scheduled a hearing to consider Confirmation of the Plan to be held on      , 2019 at 10:00 p.m., Prevailing Eastern Time, before the Honorable Robert D. Drain, United States Bankruptcy Judge, at the United States Bankruptcy Court for the Southern District of New York, White Plains Division, 300 Quarropas Street, White Plains, New York 10601. The Bankruptcy Court has directed that objections, if any, to Confirmation of the Plan be filed and served on or before      , 2019, at 4:00 p.m. Prevailing Eastern Time in the manner described under "ACCEPTANCE AND CONFIRMATION -- Confirmation Hearing."

At the Confirmation Hearing, the Bankruptcy Court will determine whether the requirements of Section 1129(a) of the Bankruptcy Code have been satisfied with regard to the Plan, in which event the Bankruptcy Court may enter an order confirming the Plan. The Debtor intends to seek Confirmation of the Plan at the Confirmation Hearing. In the event that any unimpaired Class of Claims does not accept the Plan, Confirmation of the Plan may be sought pursuant to Section 1129(b) of the Bankruptcy Code. **The Debtor believes that the Plan satisfies all applicable requirements of Section 1129(a) and Section 1129(b) of the Bankruptcy Code.** See "ACCEPTANCE AND CONFIRMATION -- Requirements for Confirmation" for a description of such requirements. Confirmation makes the Plan binding upon the Debtor, all Creditors and other parties regardless of whether they have accepted the Plan.

### D.      VOTING INSTRUCTIONS - SUMMARY

The following discussion summarizes the more detailed voting instructions set forth in the Section of this Disclosure Statement entitled "VOTING INSTRUCTIONS." If you have any questions regarding the timing or manner of casting your ballot, please refer to the "VOTING INSTRUCTIONS" Section of this Disclosure Statement and the instructions contained on the ballot that you received with this Disclosure Statement.

**General.** The Debtor has sent a ballot with voting instructions and a copy of this Disclosure Statement to all of the Debtor's known Creditors, who are in Classes impaired under the Plan and are entitled to vote to accept or reject the Plan. Creditors may refer to the above chart to determine whether they are impaired and entitled to vote on the Plan.

Creditors should read the ballot carefully and follow the voting instructions. Creditors should only use the ballot that accompanies this Disclosure Statement.

The Plan can be confirmed by the Bankruptcy Court and thereby made binding on you if it is accepted by (a) the holders of two-thirds in amount and more than one-half in number of claims in each impaired Class who actually vote on the Plan. In the event the requisite acceptances are not obtained, the Bankruptcy Court may nevertheless confirm the Plan if (i) the Bankruptcy Court finds that the Plan accords fair and equitable treatment, and does not discriminate unfairly, with respect to the Class or classes rejecting it, and (ii) at least one impaired Class of Claims has accepted the Plan determined without considering the acceptance of any insider. See "ACCEPTANCE AND CONFIRMATION -- Requirements for Confirmation" and "EFFECT OF CONFIRMATION."

**As evidenced by the preceding paragraph, a successful reorganization depends upon the receipt of a sufficient number of votes in support of the Plan. YOUR VOTE IS THEREFORE EXTREMELY IMPORTANT. Creditors should exercise their right to vote to accept or reject the Plan.**

**Voting Multiple Claims.** A single form of ballot is provided for each Class of Claims. Any Person who holds Claims in more than one Class is required to vote separately with respect to each Class in which such Person holds Claims. However, any Person who holds more than one Claim in one particular Class will be deemed to hold only a single Claim in such Class in the aggregate amount of all Allowed Claims in such Class held by such Person. Thus each Person need complete only one ballot for each Class.

**Deadline for Returning Ballots.** The Bankruptcy Court has directed that, to be counted for voting purposes, ballots for the acceptance or rejection of the Plan must be received by counsel to the Debtor by not later than 4:00 p.m. Prevailing Eastern Time, on         , 2019, at the following address:

> Shafferman & Feldman LLP
> 137 Fifth Avenue, 9th Floor
> New York, New York 10010
> Attn: Joel M. Shafferman, Esq.

**Voting Questions.** If you have any questions regarding the provisions or requirements for voting on the Plan or require assistance in completing your ballot, you may contact the Debtor's counsel, Joel M. Shafferman, Esq., at (212) 509-1802.

### E. NOTICE TO HOLDERS OF CLAIMS

This Disclosure Statement and the accompanying ballots are being furnished to the Debtor's known Creditors pursuant to Section 1125(b) of the Bankruptcy Code in connection with a solicitation of acceptances of the Plan. The Plan is incorporated herein by reference.

The purpose of this Disclosure Statement is to enable you, as a Creditor whose

Claim is in a Class impaired under the Plan to make an informed decision in exercising your right to accept or reject the Plan.

**THIS DISCLOSURE STATEMENT CONTAINS IMPORTANT INFORMATION THAT MAY BEAR UPON YOUR DECISION TO ACCEPT OR REJECT THE PLAN PROPOSED BY THE DEBTOR. PLEASE READ THIS DOCUMENT WITH CARE.**

**THIS DISCLOSURE STATEMENT IS NOT A SOLICITATION FOR CAPITAL CONTRIBUTIONS TO THE DEBTOR FROM ANY ENTITY.**

**THE PLAN HAS NOT BEEN APPROVED OR DISAPPROVED BY ANY BANKRUPTCY COURT, THE SECURITIES AND EXCHANGE COMMISSION OR ANY STATE SECURITIES COMMISSION NOR HAS THE SECURITIES AND EXCHANGE COMMISSION OR ANY STATE SECURITIES COMMISSION PASSED UPON THE FAIRNESS OR MERITS OF THE PLAN OR UPON THE ACCURACY OR ADEQUACY OF THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT. ANY REPRESENTATION TO THE CONTRARY IS UNLAWFUL.**

The historical information concerning the Debtor has been prepared by the Debtor to the best of his knowledge and belief and based upon information available to the Debtor such as filings made with the Bankruptcy Court and other courts and the Debtor does not vouch for its accuracy. The estimates of Claims set forth herein may vary from the final amounts of Claims allowed by the Bankruptcy Court. While every effort has been made to ensure the accuracy of all such information, the information presented herein is unaudited and has not been examined, reviewed or compiled by independent public accountants.

This Disclosure Statement contains a summary of certain provisions of the Plan and the transactions contemplated thereunder, and may contain descriptions of certain other related documents. While the Debtor believes that these summaries are fair and accurate, such summaries are qualified to the extent that they do not set forth the entire text of such documents. Reference is made to the Plan and the documents referred to herein and therein, if any, for a complete statement of the terms and provisions thereof. In the event of any inconsistency between the terms of the Plan and this Disclosure Statement, the terms of the Plan shall be controlling.

In reviewing the Plan and this Disclosure Statement, the reader should give special attention to "RISK FACTORS."

No statements or information concerning the Debtor or his properties, future business operations, results of operations or financial condition, are authorized by the Debtor other than as set forth in this Disclosure Statement and the exhibits hereto (including the Plan).

The statements contained in this Disclosure Statement are made as of the date hereof unless another time is specified herein. The delivery of this Disclosure Statement shall not create, under any circumstances, an implication that there has been no change in

the facts set forth herein since the date hereof.

This Disclosure Statement is intended for the sole use of Creditors to make an informed decision about the Plan. Each holder of a Claim should review this Disclosure Statement and all exhibits hereto (including the Plan) before casting a ballot. Holders of Claims are urged to consult with their own legal and financial advisors.

No solicitation of votes to accept or reject the Plan may be made except pursuant to this Disclosure Statement and Section 1125 of the Bankruptcy Code. No Person has been authorized to use or promulgate any information concerning the Debtor or his business or the Plan, other than the information contained in this Disclosure Statement and the exhibits hereto. You should not rely on any information relating to the Debtor or his businesses or the Plan other than that contained in this Disclosure Statement and the exhibits hereto.

## II. RECOMMENDATION

In opinion of the Debtor, the treatment of Creditors under the Plan provides a greater possible recovery than is likely to be achieved under any other alternatives including liquidation under Chapter 7 of the Bankruptcy Code. See "ALTERNATIVES TO THE PLAN." The Debtor believes that in Chapter 7 liquidation, Administrative Expenses may not be paid and other than to the secured creditors, no creditor would receive any distributions on account of its Allowed Claim.

**THE DEBTOR BELIEVES THAT CONFIRMATION OF THE PLAN IS IN THE BEST INTERESTS OF CREDITORS, AND URGES EACH CREDITOR ENTITLED TO VOTE TO ACCEPT THE PLAN.**

## III. SUMMARY OF THE PLAN

The following summary of the terms of the Plan is qualified in its entirety by reference to the provisions of the Plan, which is incorporated herein by reference.

### A. CLASSIFICATION OF CLAIMS

Article 3 of the Plan classifies the various Claims against the Debtor into the following six (6) classes of Claims:

**Class 1 -** Class 1 consists of the Neptune Township Real Property Secured Tax Claim, in the scheduled amount of $2,160

**Class 2a** - Class 2a consists of the NMH (Gerber) Secured Claim, in the amount of approximately $3,508,631.31.

**Class 2b**- Class 2b consists of the Mermelstein/Ringel Secured Loan Claims, in the amount of approximately $1,370,000.

**Class 3** - Class 3 consists of all Allowed Claims against the Debtor, not

including statutory fees, administrative claims, Priority Tax Claims, or Secured Claims. The approximate aggregate amount of general unsecured claims is $17,000, which is comprised of the scheduled claims of Armstrong Maintenance Corp ($3,500), Brach Eichler LLC ($7,500); and Roto Rooter ($6,000).

**Class 4**- Class 4 consists of AC I Neptune LLC, the Debtor's Interest Holder.

As set forth in Article 2 of the Plan, pursuant to Section 1123(a)(1) of the Bankruptcy Code, Statutory Fees, Administrative Claims and Priority Tax Claims against the Debtor have not been classified. See "SUMMARY OF THE PLAN -- Treatment of Non-Classified Claims."

## B. TREATMENT OF CLAIMS CLASSIFIED UNDER THE PLAN

Articles 4 and 5 of the Plan provide for the treatment of impaired and unimpaired Claims classified in Article 3 of the Plan as follows:

**Class 1 – Neptune Township Secured Real Property Tax Claim**. Subject to the provisions of Article 8 of the Plan with respect to Disputed Claims, Neptune Township, the holder of the Allowed Neptune Township Secured Real Property Tax Claim, shall be paid the full Allowed amount of its claim from the Net Sale Proceeds on the Closing Date in accordance with §1124(1) of the Bankruptcy Code.

**Class 2a – NMH (Gerber) Secured Claim**. Subject to the provisions of Article 8 of the Plan with respect to Disputed Claims, NMH (Gerber) shall receive a Cash distribution out of the Net Sale Proceeds equal to the full Allowed amount of the Allowed NMH (Gerber) Secured Claim (calculated through the Closing Date) on the closing of the sale of the Property.

**Class 2b- Mermelstein/Ringel Secured Loan Claims**. Subject to the provisions of Article 8 of the Plan with respect to Disputed Claims, Mermelstein and Ringel shall receive a Cash distribution out of the Net Sale Proceeds equal to the full Allowed amount of the Allowed Mermelstein/Ringel Secured Loan Claims (calculated through the Closing Date) on the closing of the sale of the Property.

**Class 3 – General Unsecured Claims.** Subject to the provisions of Article 8 of the Plan with respect to Disputed Claims, Each holder of an Allowed Class 4 General Unsecured Claim shall receive a Cash distribution out of the Net Sale Proceed equal to the full Allowed amount of their Allowed General Unsecured Claims on the earlier of: (i) the Initial Distribution Date or (ii) three business days after such Claim becomes an Allowed Claim, not to exceed payment in full, plus interest at the legal rate.

**Class 4 – Interests.** RK Neptune LLC, the holder of the Class 4 Interests in the Debtor, shall retain such Interests and will receive a remaining amount of the Net Sale Proceeds after the payment to holders of Allowed Statutory Fees, Allowed Administrative Claims, Allowed Non-Classified Claims, and Allowed Claims in Classes 1 through 3.

## C. TREATMENT OF NON-CLASSIFIED CLAIMS

Pursuant to Section 1123(a)(l) of the Bankruptcy Code, the Plan does not classify Administrative Claims entitled to priority treatment under Section 507(a)(2) of the Bankruptcy Code or Claims of Governmental Units entitled to priority pursuant to Section 507(a)(8) of the Bankruptcy Code. Article 2 of the Plan provides for the manner of treatment of such non-classified Claims.

**Statutory Fees.** The Debtor has a statutory duty to pay all outstanding amounts that may be due to the United States Trustee upon Confirmation, together with any fees due pursuant to 28 U.S.C. §1930(a)(6) through the date of the entry of a final decree closing the chapter 11 case, conversion of the case to chapter 7 or dismissal of the case. As of the date hereof, the Debtor is current with regard to his obligations to the United States Trustee. Statutory Fees that are due on or prior to the Effective Date of the Plan shall be paid on the Effective Date or as soon thereafter as reasonably practicable. Statutory Fees that may become due after the Effective Date shall be paid as they become due by the Debtor until the entry of a final decree closing the chapter 11 case, conversion of the case to chapter 7 or dismissal of the case.

**Administrative Claims.** Administrative Claims are defined as the costs and expenses of administration of this Case, allowable under Section 503(b) of the Bankruptcy Code, other than Bankruptcy Fees. Administrative Claims include Claims for the provision of goods and services to the Debtor after the Petition Date, the liabilities incurred in the ordinary course of the Debtor's business after the Petition Date, Claims of professionals, such as attorneys, appraisers, and accountants, retained pursuant to an order of the Bankruptcy Court, for compensation and reimbursement of expenses under Section 330 of the Bankruptcy Code, and tax claims, common charges and other charges and fees for the period from the Petition Date through the Effective Date of the Plan.

Subject to the provisions of Article 8 of the Plan with respect to Disputed Claims, each Administrative Claim, to the extent not previously paid, shall be paid by the Disbursing Agent in Cash in full on (i) the later of (x) ten (10) days after closing of the sale of the Property, (y) the date payment of such Claim is due under the terms thereof or applicable law, or (z) three business days after such Claim becomes an Allowed Administrative Claim or (ii) as may be otherwise agreed in writing by the holder of such Claim; provided, however, that any Administrative Claim incurred by the Debtor in the ordinary course of his business shall be paid in full in accordance with the terms and conditions of the particular transaction giving rise to such Administrative Claim and any agreements relating thereto.

**Professionals' Fees.** Section 330 of the Bankruptcy Code sets the standard for the determination by the Bankruptcy Court of the appropriateness of fees to be awarded to Professionals retained in a case under the Bankruptcy Code. All Professionals shall file final applications for approval of compensation and reimbursement of reasonable and necessary expenses pursuant to Section 330 of the Bankruptcy Code no later than thirty (30) days following the Effective Date. Any such application timely filed shall be deemed to be an Administrative Claim, subject to the entry of a Final Order by the Bankruptcy Court approving such application. Objections to any Professional's application for compensation

or reimbursement must be timely filed and served upon such Professional, and counsel to the Debtor in accordance with the Bankruptcy Rules or any order entered by the Bankruptcy Court.

The holders of administrative claims, on account of professional fees are Shafferman & Feldman LLP (approximately $35,000, as of the hearing on plan confirmation.

**Priority Tax Claims.** Generally, Priority Tax Claims are (subject to certain timing and date of assessment limitations) unsecured claims of õgovernmental unitsö (as defined in the Bankruptcy Code) based upon: (a) taxes measured by income or gross receipts; (b) property taxes; (c) withholding taxes; (d) employment taxes; (e) excise taxes; (f) customs duties; and (g) penalties based on actual pecuniary losses relating to the foregoing. These Priority Tax Claims include, among others, all taxes measured by income or gross receipts attributable to the three-year period immediately preceding the Petition Date (*i.e.*, from September 20, 2016 through the Petition Date).

There are no known priority tax claims.
In full satisfaction, release and discharge, the holders of Allowed Priority Tax Claims shall be paid in Cash in full on the later of (i) the Effective Date, or (ii) three business days after such Claim becomes an Allowed Priority Tax Claim.

**D.      DISPUTED CLAIMS**

Article 8 of the Plan contains a mechanism for resolving disputes concerning the amount of certain Claims asserted against the Debtor or his estate by any Entity.

**Time to Object**.  Unless otherwise ordered by the Bankruptcy Court, the Debtor may file and serve an objection to any Claim, other than a Claim that has already been allowed by an order of the Bankruptcy Court or pursuant to this Plan, on the later to occur of (i) 60 days following the Effective Date or (ii) 60 days after the date proof of such Claim or a request for payment of such Claim is filed.

**Prosecution of Objections.** After the Effective Date, only the Debtor shall have authority to settle, compromise, withdraw or resolve objections to Claims.

**Disallowance.**  Except as provided in Section 6.1 of the Plan, any Disputed Claim for which no proof of claim has been filed on or prior to the Bar Date shall be disallowed and expunged as of the Effective Date.

**E.      DISTRIBUTIONS UNDER THE PLAN**

Article 8 contains provisions governing the making of distributions on account of Claims. In general, any payments, distributions or other performance to be made pursuant to the Plan on account of any Allowed Claim shall be deemed to be timely made on the later of: (i) thirty (30) days after the closing of the sale of the Property or (ii) three business days after such Claim becomes an Allowed Claim.  All Cash payments to be made by the

Disbursing Agent pursuant to the Plan shall be made by check drawn on a domestic bank.

**Disbursing Agent.** The Debtor's counsel shall be the Disbursing Agent to make distributions under the Plan. Pursuant to the terms of the Plan, the Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court.

Distributions to holders of Allowed Claims shall be made: (1) at the addresses set forth on the Proofs of Claim filed by such holders; (2) at the addresses set forth in any written notices of address changes delivered to the Disbursing Agent after the date of any related Proof of Claim; or (3) at the address reflected in the Schedules if no Proof of Claim is filed and the Disbursing Agent has not received a written notice of a change of address. If the distribution to the holder of any Claim is returned to the Disbursing Agent as undeliverable, no further distribution shall be made to such holder unless and until the Disbursing Agent is notified in writing of such holder's then current address. The Disbursing Agent shall not be required to attempt to locate any holder of an Allowed Claim.

## F.    UNCLAIMED DISTRIBUTIONS

Any Cash or other property to be distributed under the Plan that is unclaimed shall be reallocated to those Creditors with Allowed Claims in the same class of Creditor whom such distribution was initially made. Such reallocation shall be made after the expiration of (i) three months after the Effective Date and such funds remain unclaimed or (ii) thirty days after an Order allowing the Claim of that Entity becomes a Final Order, and such Entity's claim shall be deemed to be reduced to zero.

## G.    DISTRIBUTIONS WITH RESPECT TO DISPUTED CLAIMS

During the pendency of any objection to any Claim, no distribution under the Plan will be made to the holder of such Claim. There will be set aside and reserved on behalf of such Disputed Claim, however, such cash or property as the holder thereof would be entitled to receive in the event such Claim was an Allowed Claim on the date of such distribution. On any date that distributions are to be made under the terms of the Plan, the Disbursing Agent shall deposit in one or more segregated accounts, Cash or property equal to 100% of the Cash or property that would be distributed on such date on account of Disputed Claims as if each such Disputed Claim were an Allowed Claim but for the pendency of a dispute with respect thereto, including, but not limited to (i) Disputed Claims that may be entitled to treatment as Administrative Expenses or as priority claims pursuant to Sections 503 and 507 of the Bankruptcy Code, (ii) claims of Governmental Units for any tax; (iii) any amount due but not payable on the Effective Date on account of Administrative Expenses or claims entitled to priority pursuant to Sections 503 and 507 of the Bankruptcy Code; (iv) Secured Claims; and (v) General Unsecured Claims. The Disbursing Agent may also segregate any interest, dividends or proceeds of such Cash. Such Cash together with any interest, dividends or proceeds thereof, shall be held in trust for the benefit of the holders of all such Disputed Claims pending determination of their entitlement thereto.

Within three (3) business days after the entry of a Final Order resolving an objection

to a Disputed Claim, the Disbursing Agent shall distribute all Cash or property, including any interest, dividends or proceeds thereof, to which a holder is then entitled, if any, with respect to any formerly Disputed Claim that has become an Allowed Claim. To the extent practicable, the Disbursing Agent may invest any Cash or other property segregated on account of a Disputed Claim, undeliverable distribution, or any proceeds thereof (i) in a manner that will yield a reasonable net return taking into account the safety of the investment or (ii) in any manner permitted by Section 345 of the Bankruptcy Code; provided, however, that the Disbursing Agent shall be under no obligation to so invest such Cash or proceeds and shall have no liability to any party for any investment made or any omission to invest such Cash, other property or proceeds.

## H.    COMPLIANCE WITH TAX REQUIREMENTS

In connection with the Plan, the Disbursing Agent shall comply with all withholding and reporting requirements imposed by federal, state and local taxing authorities and distributions under the Plan shall be subject to such withholding and reporting requirements; provided, however, that the transfer of any Cash, property or other interest hereunder shall not be subject to any federal, state or local tax to the fullest extent provided under Section 1146 of the Bankruptcy Code.

## I.    EFFECTIVE DATE

The Effective Date of the Plan is defined to mean the later of the first day after the Confirmation Order becomes a final, non-appealable order or any stay of the Confirmation Order no longer remains in effect.

## J.    TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

All Executory Contracts, to the extent not previously rejected or assumed or designated to be assumed and assigned pursuant to the Plan, shall be deemed rejected as of the Effective Date.  Any claim for damages arising from such rejection shall be filed with the Court no later than thirty (30) days after receipt of notice of the occurrence of the Effective Date.

## K.    IMPLEMENTATION OF THE PLAN

**Tax Exemption.** The Confirmation Order shall contain appropriate provisions, consistent with Section 1142 of the Bankruptcy Code, directing the Debtor to execute or deliver or to join in the execution or delivery of any instrument required to effect a transfer of either of the Properties and to perform any act, including the satisfaction of any Lien, that is necessary for the consummation of the Plan. Pursuant to Section 1146 of the Bankruptcy Code, the issuance, transfer, or exchange of any security and the making or delivery of any instrument of transfer in connection with or in furtherance of the Plan shall not be subject to tax under any law imposing a stamp tax, real estate transfer tax, mortgage recording tax or similar tax.

**Sale of Real Properties.** The sale of the Property shall not be taxed under any law imposing a stamp or similar tax as provided for in Section 1146(a) of the Bankruptcy Code, including, but not limited to applicable New Jersey State law.

**Funding.** Except as set forth elsewhere in this Plan, all payments required to be made under this Plan shall be made by the Disbursing Agent in accordance with the terms of this Plan from the Net Sale Proceeds to be held by counsel for the Debtor in the Creditorsø Fund.

## M.     RESERVATION OF RIGHTS OF ACTION

Except as otherwise provided in the Plan, or in any contract, instrument, release or other agreement entered into in connection with the Plan, the Debtor shall retain, and in accordance with his determination of the best interest of the estate, may enforce any claims, rights and causes of action (i) arising under Sections 510 and 544 through 550 of the Bankruptcy Code or (ii) belonging to the Debtor as of the Petition Date, or the Estate of the Debtor, and arising under any provision of state or federal law, or any theory of statutory or common law or equity, including, but not limited to, any cause of action asserted, or which may hereafter be asserted. Any recovery received by the Debtor through the prosecution, settlement or collection of any such claim, right or cause of action, shall be used to satisfy Allowed Claims under the terms of the Plan.

## N.     MODIFICATION AND REVOCATION OF THE PLAN

The Plan may be altered, amended or modified by the Debtor at any time before the substantial consummation of the Plan, as provided in Sections 1101(a) and 1127 of the Bankruptcy Code and Bankruptcy Rule 3019. Section 1127 of the Bankruptcy Code authorizes the proponent of a plan of reorganization to modify such plan at any time prior to confirmation of the plan so long as the plan, as modified, continues to meet certain requirements of Sections 1122 and 1123 of the Bankruptcy Code with respect to the classification of Claims and the contents of a plan. Prior to Confirmation, if a proponent files modifications to a plan, pursuant to Section 1127(a) "the plan as modified becomes the plan." In other words, if a modification materially alters the treatment of any Creditor that has accepted the Plan, the Debtor will be required to make additional disclosures to those Creditors whose treatment has been materially and adversely altered and give such Creditors an opportunity to change their votes.

The Debtor may revoke or withdraw the Plan at any time prior to entry of the Confirmation Order. If the Debtor revokes or withdraws the Plan, or if no Confirmation Order is entered, the Plan shall be null and void, and nothing contained in the Plan shall constitute a waiver or release of any Claims by or against the Debtor; or prejudice in any manner the rights of the Debtor in any further proceedings involving the Debtor.

## O.     RETENTION OF JURISDICTION

The Plan contains detailed provisions providing for the retention of jurisdiction by the Bankruptcy Court over the Case for the purposes of, *inter alia,* determining all disputes

relating to Claims and other issues presented by or arising under the interpretation, implementation or enforcement of the Plan, and to determine all other matters pending on the date of confirmation.

## P.    RISK FACTORS

The Plan is a liquidating Plan and as such the Debtor believes that after the sale of the Property the Debtor will not have any remaining business to administer except the distributions due under the Plan from the sale proceeds and miscellaneous assets such as claims arising under Sections 544 through 550 of the Bankruptcy Code with respect to pre and post-petition transfers of his assets. The Plan is subject to consummation of the sale of the Property

The Debtor believes that the confirmation of the Plan is not likely to be followed by further financial reorganization of the Debtor.

## IV. VOTING INSTRUCTIONS

A Creditor who is entitled to vote may accept or reject the Plan by executing and returning to the Balloting Agent (as defined below) the ballot (a ōBallotö) that was sent out with this Disclosure Statement. See ōVOTING INSTRUCTIONS -- Who May Vote.ö The following instructions govern the time and manner for filing Ballots accepting or rejecting the Plan, withdrawing or revoking a previously filed acceptance or rejection, who may file a Ballot, and procedures for determining the validity or invalidity of any Ballot received by the Balloting Agent.

## A.    DEADLINE FOR RECEIPT OF BALLOTS

The solicitation period for votes accepting or rejecting the Plan will expire at 4:00 p.m., Prevailing Eastern Time, on        , 2019 (the ōVoting Deadlineö). A Ballot accepting or rejecting the Plan must be received no later than that date and time or it will not be counted in connection with the Confirmation of the Plan or any modification thereof.

## B.    BALLOTING AGENT

All votes to accept or reject the Plan must be cast by using the Ballot. Executed Ballots should be returned by        , 2019 at 4:00 p.m., the Voting Deadline, to:

> Shafferman & Feldman LLP
> 137 Fifth Avenue, 9th Floor
> New York, New York 10010
> Attn: Joel M. Shafferman, Esq.

(the ōBalloting Agentö). A Creditor entitled to vote who has not received a Ballot, or whose Ballot has been lost, stolen or destroyed, may contact the Balloting Agent at the address indicated above, or call Joel M. Shafferman, Esq., at (212) 509-1802.

## C. WHO MAY VOTE - IN GENERAL

Claims in Class 1, Class 2, and Class 3 are not impaired under the Plan and, thus, are assumed to have accepted the Plan. *While Class 4,* the interest holder, is impaired, it is not entitled to vote.

**Ballots Executed in a Representative or Fiduciary Capacity.** Ballots executed by executors, administrators, guardians, attorneys-in-fact, officers of corporations or others acting in a fiduciary or representative capacity, must indicate the capacity in which such person executed the Ballot and, unless otherwise determined by the Debtor, must submit proper evidence satisfactory to the Debtor of their authority to so act.

**Voting Multiple Claims.** A single form of ballot is provided for each Class of Claims. Any Person who holds Claims in more than one Class is required to vote separately with respect to each Class in which such Person holds Claims. However, any Person who holds more than one Claim in one particular Class will be deemed to hold only a single Claim in such Class in the aggregate amount of all Allowed Claims in such Class held by such Person. Thus each Person need complete only one ballot for each Class.

## D. PENDING OBJECTIONS

No Ballot cast with respect to any Claim which is the subject of a pending objection will be counted for purposes of determining whether the Plan has been accepted or rejected, unless the Bankruptcy Court orders otherwise.

## E. DEFECTS OR IRREGULARITIES

**ANY EXECUTED AND TIMELY FILED BALLOT WHICH DOES NOT INDICATE EITHER ACCEPTANCE OR REJECTION OF THE PLAN SHALL BE DEEMED TO BE NEITHER AN ACCEPTANCE NOR A REJECTION OF THE PLAN AND SHALL BE DEEMED NOT TO HAVE BEEN CAST.**

Where more than one timely and properly completed Ballot is received, the Ballot which bears the latest date will be counted.

The Debtor reserves the right to waive any defects or irregularities or conditions of delivery as to any particular Ballot. Unless waived, any defects or irregularities in connection with deliveries of Ballots must be cured prior to the deadline for filing timely Ballots. Neither the Debtor nor any other person will be under any duty to provide notification of defects or irregularities with respect to deliveries of Ballots, nor will any of them incur any liability for failure to provide such notification. All questions as to the validity, form, eligibility (including the time of receipt), acceptance and revocation or withdrawal of Ballots will be determined by the Bankruptcy Court, upon motion and upon such notice and hearing as is appropriate under the circumstances. Unless otherwise directed by the Bankruptcy Court, delivery of Ballots will not be deemed to have been made until such irregularities have been cured or waived. Ballots as to which any irregularities have not been cured or waived will not be counted toward the acceptance or

rejection of the Plan.

### F. REVOCATION OF PREVIOUSLY FILED ACCEPTANCES OR REJECTIONS

Any Creditor who has delivered a valid Ballot for the acceptance or rejection of the Plan may withdraw such acceptance or rejection by delivering a written notice of withdrawal to the Balloting Agent at any time prior to the Voting Deadline.

A notice of withdrawal, to be valid, must (i) describe the Claim represented by such Claim, (ii) be signed by the Creditor as the case may be, in the same manner as the Ballot was signed and (iii) be received by the Balloting Agent on or before the Voting Deadline. The Debtor reserves the absolute right to contest the validity of any such withdrawals of Ballots.

## V. ACCEPTANCE AND CONFIRMATION

### A. CONFIRMATION HEARING

The Bankruptcy Code requires that the Bankruptcy Court, after notice, hold a hearing to consider confirmation of the Plan. The Confirmation Hearing is scheduled to commence on                2019 at 10:00 a.m before the Honorable Robert D. Drain, United States Bankruptcy Judge, at the United States Bankruptcy Court for the Southern District of New York, White Plains Division, 300 Quarropas Street, White Plains, New York 10601. The Confirmation Hearing may be adjourned from time to time by the Bankruptcy Court without further notice except for an announcement made at the Confirmation Hearing.

The Bankruptcy Court has directed that objections, if any, to confirmation of the Plan be filed and served so as to be received on or before          , 2019 at 4:00 p.m. Prevailing Eastern Time by: (i) Shafferman & Feldman LLP, 137 Fifth Avenue, 9th Floor, New York, New York 10010, Attn: Joel M. Shafferman, Esq. and (ii) Office of the United States Trustee, U.S. Federal Office Building, 201 Varick Street, Suite 1006, New York, New York 10014, Attn: Richard Morrissey, Esq.

### B. REQUIREMENTS FOR CONFIRMATION

At the Confirmation Hearing, the Bankruptcy Court will determine whether the requirements of Section 1129 of the Bankruptcy Code have been satisfied, in which event the Bankruptcy Court will enter an order confirming the Plan. These requirements include determinations by the Bankruptcy Court that: (i) the Plan has classified Claims in a permissible manner, (ii) the contents of the Plan comply with various requirements of the Bankruptcy Code, (iii) the Plan has been proposed in good faith, (iv) the Debtor has made disclosures concerning the Plan that are adequate and include information concerning all payments made or promised in connection with the Plan and the Case, (v) the Plan is in the öbest interestö of all Creditors, (vi) the Plan is feasible, and (vii) the Plan has been accepted by the requisite number and amount of Creditors in each Class entitled to vote on the Plan, or that the Plan may be confirmed without such acceptances. The Debtor believes that all of

these conditions have been or will be met prior to the Confirmation Hearing.

**Best Interest Test.** The so-called "best interest" test requires that each impaired Creditor either (a) accepts the Plan or (b) receives or retains under the Plan property of a value, as of the Effective Date of the Plan, that is not less than the value such entity would receive or if the Debtor were to be liquidated under Chapter 7 of the Bankruptcy Code.

To determine what the holders in each Impaired Class of Claims would receive if the Debtor were liquidated under Chapter 7, the Bankruptcy Court must determine the dollar amount that would be generated from the liquidation of the Property in a Chapter 7 liquidation case. The amount that would be available for satisfaction of Allowed Claims against the Debtor would consist of the proceeds resulting from the disposition of the Property. Such amount would be reduced by the amount of any Claim or Claims secured by the Property, the costs and expenses of the liquidation, and such additional Administrative Claims and Priority Claims that may result from the termination of the Debtor's business.

The costs of liquidation under Chapter 7 would become Administrative Claims with the highest priority against the proceeds of liquidation. Such costs would include the fees payable to attorneys, financial advisors, appraisers, accountants and other professionals that a Chapter 7 trustee may engage to assist in the liquidation. In addition, Chapter 7 costs would include any liabilities incurred or assumed pursuant to the transactions necessary to effectuate the liquidation of the Property. Moreover, claims entitled to administrative priority may arise by reason of any breach or rejection of any executory contracts entered into by the Debtor during the pendency of the case in Chapter 11.

After satisfying Administrative Claims arising in the course of the Chapter 7 liquidation, the proceeds of the liquidation would then be payable to satisfy any unpaid expenses incurred during the time this Case was pending under Chapter 11, including compensation for attorneys, financial advisors, appraisers, accountants and other professionals retained by the Debtor.

After consideration of the effects that a Chapter 7 liquidation would have on the proceeds available for distribution including (i) the increased costs and expenses of a Chapter 7 liquidation arising from fees payable to the attorneys, financial advisors, appraisers, accountants and other professionals that a Chapter 7 trustee may engage to assist in the liquidation, (ii) the erosion in value of the Debtor's properties in a Chapter 7 case in the context of the expeditious liquidation required under Chapter 7 and the "forced sale" atmosphere that would prevail, and (iii) the potential increase in Claims which would be satisfied on a priority basis or on a parity with the Claims of general Unsecured Creditors, the Debtor believes that holders of Claims in impaired Classes would be unlikely to receive any distribution on account of their Claims except under the Plan.

**Liquidation Analysis.** The Debtor has concluded that the Plan provides to each Creditor a recovery with a present value greater than the present value of the distribution which such Creditor would receive if the Debtor was liquidated under Chapter 7 of the Bankruptcy Code. Although a liquidation analysis estimating distributions under a

hypothetical liquidation of a debtor's properties is commonly submitted in support of a proposed plan, here where the Debtor's properties are to be sold under a Plan and the proceeds distributed in accordance with the priority scheme established under the Bankruptcy Code and applicable non-bankruptcy law, the actual liquidation value will be established and a hypothetical analysis will serve little purpose.

The Debtor believes that in the event the Property was sold in a Chapter 7 liquidation, all of the proceeds would go to a portion, if not all, to NMH's Secured Claim. In such event, no funds would be remaining for the Unsecured Creditors, thus no Unsecured Creditor would receive a distribution in a Chapter 7 case.

**Feasibility.** For the Plan to be confirmed, it must be demonstrated that consummation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Debtor. Because the Plan will be implemented by the sale of the Property, feasibility is not relevant. However, the Debtor contemplates that the sales will pay all Allowed Claims, in full, and pay a significant to the Interest Holder.

**Confirmation with the Acceptance of Each Impaired Class.** The Plan may be confirmed if each impaired Class of Claims accepts the Plan. Classes of Claims which are not impaired are deemed to have accepted the Plan. A Class is impaired if the legal, equitable or contractual rights attaching to the Claims of that Class are modified other than by curing defaults and reinstating maturities or by payment in full in cash.

Holders of Claims impaired by the Plan are entitled to file Ballots accepting or rejecting the Plan. Holders of Claims not impaired by the Plan are deemed to accept the Plan, and may not vote to accept or reject the Plan. Holders of Claims that will neither receive nor retain any property under the Plan and are deemed to reject the Plan.

The Bankruptcy Code defines acceptance of a plan by a Class of Claims as acceptance by the holders of two-thirds in dollar amount and a majority in number of Claims of that Class. Only those Claims, the holders of which actually vote to accept or reject the Plan, are counted for the purpose of determining whether the requisite number and amount of acceptances have been received.

With respect to Unsecured Claims, the absolute priority rule allows the confirmation of a Plan over the rejection of a class of Unsecured Claims if the holder of any claim that is junior to the claims of such class will not receive or retain under the Plan on account of such junior claim any property.

**Confirmation Without the Acceptance of Each Impaired Class.** In the event that any impaired Class of Claims does not accept the Plan, the Bankruptcy Court may nevertheless confirm the Plan at the request of the Debtor if (i) all other requirements of Section 1129(a) of the Bankruptcy Code are satisfied, (ii) at least one impaired Class of Claims votes to accept the Plan without regard to any vote cast on account of a Claim held by "insiders" (as defined in the Bankruptcy Code) and (iii) as to each impaired Class which has not accepted the Plan, the Bankruptcy Court determines that the Plan "does not discriminate unfairly" and is "fair and equitable" with respect to such non-accepting Class. The Debtor believes that the Plan is in the best interest of all Creditors and strongly

recommends that all parties entitled to vote cast their ballots in favor of accepting the Plan. Nevertheless, out of an excess of caution, pursuant to the Plan, the Debtor has requested that the Court confirm the Plan over the rejection of any non-accepting class in the event all other elements of Section 1129(a) are satisfied.

A plan õdoes not discriminate unfairlyö if the legal rights of a non-accepting class are treated in a manner that is consistent with the treatment of other classes whose legal rights are intertwined with those of the non-accepting class, and no class receives payments in excess of that which it is legally entitled to receive for its Claims. The Debtor believes that under the Plan all classes of Impaired Claims are treated in a manner that is consistent with the treatment of other classes of Claims with which their legal rights are intertwined, if any, and no class of Claims will receive payments or Property with an aggregate value greater than the aggregate value of the Allowed Claims in such class. Accordingly, the Debtor believes the Plan does not discriminate unfairly as to any impaired class of Claims.

Whether the Plan is fair and equitable depends upon the application of the so-called õabsolute priority ruleö. Subject to certain exceptions, this rule, codified in Section 1129(b)(2) of the Bankruptcy Code, generally requires that an impaired Class of Claims or Interests that has not accepted the Plan must be paid in full if a more junior class receives any distribution under the Plan.

With respect to Unsecured Claims, the absolute priority rule allows the confirmation of a Plan over the rejection of a class of Unsecured Claims if the holder of any claim that is junior to the claims of such class will not receive or retain under the Plan on account of such junior claim.

## VI. EFFECT OF CONFIRMATION

### A. DISCHARGE

Pursuant to section 1141(d)(1) of the Bankruptcy Code, Confirmation will discharge the Debtor from any Claim that arose prior to Confirmation whether or not the Holder of the Claim has accepted the Plan upon completion of all payments required to be made under the Plan.

### B. INJUNCTION

Except (i) as otherwise provided in the Plan (ii) as otherwise provided under Final Order entered by the Bankruptcy Court or (iii) with respect to the Debtor's obligations under the Plan, the entry of the Confirmation Order shall forever stay, restrain and permanently enjoin on and after the Confirmation Date (a) the commencement or continuation of any action, the employment of process, or any act to collect, enforce, attach, recover or offset from the Debtor's Properties sold under the Plan, or (b) the creation, perfection or enforcement of any lien or encumbrance against the Properties sold under the Plan with respect to any Claim discharged under the Plan.

### C. RELEASES

**Plan and Confirmation Order as Release**. From and after the Effective Date, a copy of the Confirmation Order and the Plan shall constitute and may be submitted as a complete defense, in favor of the Debtor, to any claim or liability released pursuant to Article 9 of the Plan.


## VII. ALTERNATIVES TO THE PLAN

If the Plan is not confirmed by the Bankruptcy Court the alternatives may include (a) liquidation of the Debtor under Chapter 7 of the Bankruptcy Code or (b) the promulgation and confirmation of an alternative plan of reorganization.

As discussed at length above, the Debtor believes that the Plan provides a recovery to all Creditors equal to or greater than would be obtainable in a Chapter 7 liquidation.


## VIII. CERTAIN FEDERAL INCOME TAX CONSEQUENCES

The following summary of certain U.S. Federal income tax consequences is for informational purposes only and is not a substitute for careful tax planning and advice based upon the particular circumstances pertaining to each holder of an Allowed General Unsecured Claim. Each holder of an Allowed General Unsecured Claim is urged to consult his own tax advisors. This summary does not cover all potential U.S. federal income tax consequences that could possible arise under the Plan and does not address the Plan's U.S. federal income tax consequences for any holder of an General Unsecured Claim that is a partnership (or other pass-through entity) or otherwise subject to special tax rules.

This summary is based upon the laws in effect on the date of this Disclosure Statement and existing judicial and administrative interpretations thereof, all of which are subject to change, possibly with retroactive effect. Holders of Allowed General Unsecured Claims should consult their own tax advisors as to the Plan's specific federal, state, local and foreign income and other tax consequences.

In the event of a distribution to Class 3 General Unsecured Claims, each Holder will recognize gain or loss upon the receipt of such pro-rata share equal to the difference, if any, between the "amount realized" by such Holder and the Holder's adjusted basis in his, her or its Allowed Unsecured Claim. Any gain or loss realized by a Holder should constitute ordinary income or loss to her unless the General Unsecured Claim is a capital asset. If a General Unsecured Claim is a capital asset, and it has been held for more than one year, such Holder will realize a long term capital gain or loss.

The tax consequences to Holders will differ and will depend on factors specific to each Holder, including but not limited to: (i) whether the Holder's General Unsecured Claim (or portion thereof) constitutes a claim for principal or interest; (ii) the origin of the Holder's Claim; (iii) the type of consideration received by the Holder in exchange for the Unsecured Claim; (iv) whether the Holder is a United States person or foreign person for tax purposes; (iv) whether the Holder reports income on the accrual or cash basis method; or (v) whether the Holder has taken a bad debt deduction or otherwise recognized loss with

respect to a General Unsecured Claim.

**THERE ARE MANY FACTORS WHICH WILL DETERMINE THE TAX CONSEQUENCES TO EACH HOLDER. FURTHERMORE, THE TAX CONSEQUENCES OF THE PLAN ARE COMPLEX, AND IN SOME CASES, UNCERTAIN. THEREFORE IT IS IMPORTANT THAT EACH HOLDER OBTAIN HIS, HER OR ITS OWN TAX ADVICE REGARDING THE TAX CONSEQUENCES TO SUCH HOLDER AS A RESULT OF THE PLAN.**

**THE DISCUSSION HEREIN IS NOT INTENDED OR WRITTEN TO BE USED, AND CANNOT BE USED, BY ANY HOLDER FOR THE PURPOSE OF AVOIDING TAX PENALTIES THAT MAY BE IMPOSED ON A TAX PAYER. THE DISCUSSION HEREIN WAS WRITTEN TO SUPPORT THE TRANSACTIONS DESCRIBED IN THIS DISCLOSURE STATEMENT. EACH HOLDER SHOULD SEEK ADVICE BASED UPON THE HOLDER'S PARTICULAR CIRCUMSTANCES FROM AN INDEPENDENT TAX ADVISOR**.

## IX. ADDITIONAL INFORMATION

Requests for information and additional copies of this Disclosure Statement, the Ballots and the other materials delivered together herewith and all deliveries, correspondence and questions, as the case may be, relating to the Plan should be directed to the Debtor's counsel, Shafferman & Feldman LLP, 137 Fifth Avenue, 9th Floor, New York, New York 10010, Attn: Joel M. Shafferman, Esq., (212) 509-1802.

Copies of all pleadings, orders, lists, schedules, proofs of claims or other documents submitted in these cases are on file in the Office of the Clerk of the United States Bankruptcy Court, at the United States Bankruptcy Court, Southern District of New York, White Plains Division, 300 Quarropas Street, White Plains, New York 10601, and are available for public inspection Monday through Friday, between the hours of 9:00 a.m. and 4:30 p.m. Additionally, copies of all pleadings, orders, lists, schedules, proofs of claims or other documents submitted in this case may be viewed and printed over the Internet from the Bankruptcy Court's Electronic Case Filing system at http://www.nysb.uscourts.gov.

## XII. CONCLUSION

The Debtor believes the Plan is in the best interests of all Creditors and strongly encourages all holders of Claims against the Debtor to vote to accept the Plan and to evidence such acceptance by promptly returning their Ballots to ensure that they will be received not later than 4:00 p.m. Prevailing Eastern Time on _____, 2019.

Dated: New York, New York
        November 6, 2018

Respectfully submitted,


 /S/    Jacob    Mermelstein                              
Jacob Mermelstein, Member of RK Neptune LLC,
the Sole Member of AC I NEPTUNE LLC, and
Co-Manager of AC I NEPTUNE LLC


SHAFFERMAN & FELDMAN LLP
Proposed Counsel to the Debtor


By:    /S/ Joel M. Shafferman                    
           Joel M. Shafferman, Esq.
           137 Fifth Avenue, 9th Floor
           New York, New York 10010
           (212) 509-1802